## IN THE UNITED STATES DISTRICT COURT FOR THE
## MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

| | | |
|---|---|---|
| JEFFREY KING, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | NO. 3:18-cv-00017 |
| | ) | |
| TONY MAYS, Warden, | ) | JUDGE CAMPBELL |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM AND ORDER

### I.      Introduction

This is a habeas corpus action brought by Petitioner Jeffrey King, a state prisoner, pursuant

to 28 U.S.C. § 2254. Respondent has filed his answer to the petition (Doc. No. 13), and Petitioner

has filed a reply brief (Doc. Nos. 22, 24).

Before the Court is Petitioner's "Motion for Discovery and/or Request that the Court Take

Judicial Notice of Pertinent Records in the Recent Decision of *Brink Fidler and Justin Fox,*

*Plaintiffs, v. The Twentieth Judicial District Drug Task Force, Defendant*, No. 3:16-cv-02591,

2018 WL 4403183 (M.D. Tenn. September 17, 2018)." (Doc. No. 26.) Respondent filed a motion

to extend his deadline to respond to the motion by one day (Doc. No. 29) and, one day later, his

response to the motion (Doc. No. 30). Petitioner has filed a reply to Respondent's response. (Doc.

No. 31.)

### II.      Discussion

Invoking Rule 6 of the Rules Governing Section 2254 Cases, Petitioner moves for

discovery of certain documents which informed Judge Crenshaw's factual findings in *Fidler*, or

alternatively for the Court to take judicial notice of those documents. (Doc. No. 26.) In particular,

Petitioner seeks an order directing either the Clerk of Court or Respondent to provide certain filings from the record in *Fidler* (Case No. 3:16-cv-02591, Doc. Nos. 18, 47, 58, 59, 61, 77, 80, 94, 95, and 98), and certain trial exhibits (Plaintiff's Exhibits 1, 2, 10, 15, 16, 17, 18, and 23, and Defendant's Exhibit 20). (Doc. No. 26 at 6.)

"A habeas petitioner, unlike the usual civil litigant in federal court, is not entitled to discovery as a matter of ordinary course." *Bracy v. Gramley*, 117 S. Ct. 1793, 1796–97 (1997). District courts may, in their discretion and "for good cause," authorize discovery under the Federal Rules of Civil Procedure in a habeas case. Rule 6(a), Rules Gov'g § 2254 Cases. The showing of good cause must be "fact specific," and must include a demonstration of the materiality of the requested information. *Stanford v. Parker*, 266 F.3d 442, 460 (6th Cir. 2001). Conclusory assertions of the need for discovery and the materiality of the information sought will not suffice; "Rule 6 does not sanction fishing expeditions[.]" *Williams v. Bagley*, 380 F.3d 932, 974 (6th Cir. 2004) (citation and internal quotation marks omitted).

Here, Petitioner seeks to discover specific documents and trial exhibits that were introduced on the record in *Fidler*, a wage-and-hour case filed under the Fair Labor Standards Act against The Twentieth Judicial District Drug Task Force by its former Director and another agent. Petitioner seeks this discovery to support his claim that his trial counsel was constitutionally ineffective in failing to mount a due process challenge to his prosecution,[1] based on the Task Force's structural relationship with the Davidson County District Attorney's Office and the

---

[1] Petitioner recognizes that this claim was procedurally defaulted because it was not raised on post-conviction review, but argues that the ineffective assistance of his post-conviction trial counsel establishes cause excusing the default. (Doc. No. 1 at 73 (citing, *e.g.*, *Martinez v. Ryan*, 132 S. Ct. 1309 (2012).) "To overcome the default, a [petitioner] must . . . demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the [petitioner] must demonstrate that the claim has some merit." *Martinez*, 132 S. Ct. at 1318.

resulting conflict of interest that Assistant District Attorney Zimmerman labored under while investigating and prosecuting the criminal charges against Petitioner as well as related civil forfeiture proceedings. (Doc. No. 1 at 11, 72–81.) Petitioner asserts his need for this discovery as follows:

> . . . Mr. King would submit that, among other things, what is telling is that there is an email by Mr. Fidler, to the District Attorney, Assistant District Attorney and Chief of Police, detailing much of the inner workings, financial movements, forfeitures importance, and the likes of the Task Force of which will be pertinent to the present case wherein Mr. King's issues are based precisely in part on the personal and/or institutional financial incentives of the Task Force as well as its overall statutorily permissive albeit unconstitutional operational function.
>
> The record in *Fidler* contains the above and further contains information as to who comprises the Board of Directors (Prosecutor, Director, Chief of Police), the fact that the same controls the Task Force, makes all of the decisions relative [to] forfeitures, finances, investigations, decisions on salaries, how paid, self-ethical issues and the like. The record goes on to contain information pointing out that for sustainability the Task Force has to have a statutorily constructed system that permits it to not lose benefits from fines and forfeitures proceeds as would occur under a different structure.
>
> The record contains information . . . that expresses the extent that even a Director, such as Fidler, would go to win and obtain money, even if it meant embellishing and exaggerating his duties before a federal court-let alone the temptation to the average agent or person involved in the state investigations, forfeitures, prosecutions and the like.

(Doc. No. 26 at 5–6.)

Petitioner states that, while some of the information he seeks may be found on the face of Judge Crenshaw's opinion in *Fidler*, "the actual details and how far back it all extends on the surface gives indication that such can be found within the documents found in *Fidler's* record and for the most part is the exact same system of operation as was in place when the Petitioner's case went through starting in 2005 forward." (*Id.* at 6.) Respondent points out that the time span at issue in *Fidler* was 2014-2015, while Petitioner was investigated by the task force in 2008-2009, indicted in 2010, and pled guilty in 2011. (Doc. No. 30 at 3–4.) However, Petitioner claims that

the *Fidler* opinion reveals that the same statutory and operative framework was in place at all times relevant to his case. He further states that "Respondent has never denied or even attempted to dispute the arrangement [between the Task Force and the District Attorney's Office] but has essentially argued that the same [w]as permissible because it follows Tennessee Statute[s]." (Doc. No. 31 at 2.) Indeed, Respondent has relied on the fact that "Judicial Drug Task Forces, and the prosecutor's role in the task force, are statutorily authorized," and "[a]ny forfeiture proceeds arising from the activities of a judicial drug task force . . . 'shall be used exclusively in a drug enforcement or drug education program of the district attorney as directed by the board of directors of the judicial drug task force.'" (Doc. No. 13 at 39 (quoting, *e.g.*, Tenn. Code Ann. § 39-17-420(c).) Respondent further notes that, pursuant to Tenn. Code Ann. §§ 8-7-105(c) and 40-33-211(b), "General Zimmerman received a predetermined salary" that was not conditioned upon or supplemented by funds generated by asset forfeitures. (*Id.* at 41.)

The Court finds that Petitioner has failed to demonstrate good cause for the discovery he seeks, particularly because he has not shown how the details of the inner workings of the Task Force purportedly contained in the *Fidler* documents are material to his claim of ineffective assistance of counsel. In adjudicating that claim, the Court must determine whether counsel's failure to challenge the prosecution based on the relationship between the Task Force and the Davidson County District Attorney's Office was "reasonable considering all the circumstances." *Strickland v. Washington*, 466 U.S. 668, 688 (1984). But, as Respondent argues, the circumstances of that relationship appear to be established under the statutes of the State of Tennessee, which provide the framework that allowed for what Petitioner assails as "the 20th Judicial District Drug Task Force arrangement in and under the District Attorney's Office" and "the ultimate abomination" of Assistant District Attorney Zimmerman's involvement with both his criminal

prosecution and civil forfeiture proceedings against a co-defendant. (Doc. No. 1 at 80.) Petitioner claims that counsel unreasonably failed to challenge the prosecution based on issues implicit in the statutorily authorized relationship between the Task Force and District Attorney's Office. (*See* Doc. No. 1 at 78 (asserting that "not only does the funds for any forfeiture go to the DA's Office's Task Force, but the DA's Office oversees the entire operation inclusive of obtaining search warrants, wiretaps, investigations and the prosecution of the case"); Doc. No. 26 at 5 (describing Petitioner's challenge based on the "personal and/or institutional financial incentives of the Task Force as well as its overall statutorily permissive albeit unconstitutional operational function").) Within the discovery he seeks, Petitioner does not identify any specific facts material to the reasonableness inquiry (i.e., facts outside of the statutorily authorized structural and financial relationship between the two entities that would show that his trial counsel unreasonably failed to seek dismissal of the charges against Petitioner), or that the documents he seeks will be likely to "resolve any factual disputes that could entitle him to relief." *Stanford*, 266 F.3d at 460. His assertion of an "indication" that relevant details of the Task Force operation in his case might be found in the *Fidler* documents—including "information that expresses the extent that even a Director, such as Fidler, would go to win and obtain money, . . . let alone the temptation to the average [prosecutor]"—reveals that his discovery request is grounded in speculation (Doc. No. 26 at 6), and "falls more in the category of a fishing expedition" than a search for specific material facts. *Stanford*, 266 F.3d at 460. The Court will not authorize such discovery in this habeas case.

Nor will the Court take judicial notice of any of the filings or trial exhibits in *Fidler*. Although judicial notice of such documents may be taken to confirm the fact of their filing, the truth of the facts asserted or contained within those documents may not be judicially noticed, particularly when the significance of the facts is subject to dispute. *Jergens v. Ohio Dep't of Rehab.*

*& Corr. Adult Parole Auth.*, 492 F. App'x 567, 569 (6th Cir. 2012). Petitioner claims that he is not asking the Court to notice any statements within the *Fidler* filings as true, but merely as "showing undisputed general policy of the task force's operation and financial networking." (Doc. No. 31 at 3.) But this amounts to notice of the truth of such policy statements. "[A] court cannot notice pleadings or testimony as true simply because these statements are filed with the court" and are not disputed by the parties to the litigation. *In re Omnicare, Inc. Sec. Litig.*, 769 F.3d 455, 468 (6th Cir. 2014) (quoting 21B Charles Alan Wright et al., *Federal Practice and Procedure* § 5106.4 (2d ed. 2005)). The Court therefore declines to take judicial notice of the *Fidler* filings.

**III.    Conclusion**

In light of the foregoing, Respondent's motion to extend his response deadline (Doc. No. 29) is **GRANTED NUNC PRO TUNC**, and Petitioner's Motion for Discovery and/or Request that the Court Take Judicial Notice (Doc. No. 26) is **DENIED**.

It is so **ORDERED**.

_____
WILLIAM L. CAMPBELL, JR.
UNITED STATES DISTRICT JUDGE