# IN THE UNITED STATES DISTRICT COURT FOR THE
## MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

JEFFREY KING,              )
                          )
        Petitioner,      )
                          )    **NOS. 3:18-cv-00112 (LEAD CASE),**
**v.**                   )    **3:18-cv-00017, 3:18-cv-00018**
                          )
**TONY MAYS, Warden,**    )    **JUDGE CAMPBELL**
                          )
        Respondent.    )

## <u>MEMORANDUM OPINION</u>

Petitioner Jeffrey King, a former state inmate[1] proceeding pro se, has filed three habeas corpus actions pursuant to 28 U.S.C. § 2254, including the instant case, challenging the legality of his Sumner, Davidson, and Rutherford County convictions and combined effective 40-year prison sentence.[2] Respondent has filed the record of proceedings in state court (Doc. No. 12) and his Answer to the Petition (Doc. No. 14). Petitioner has filed original and supplemental briefs in Reply to Respondent's Answer. (Doc. Nos. 22, 24.)

This matter is ripe for the Court's review, and the Court has jurisdiction. Respondent does not dispute that the Petition in this case is timely, that this is Petitioner's first Section 2254 petition

---

[1]    Petitioner was released on parole in 2019 but remains "in custody" for purposes of the Court's jurisdiction of his habeas petition. *See Smith v. Tennessee Bd. of Prob. & Parole*, No. 3:11-cv-739, 2012 WL 1933669, at *1 (M.D. Tenn. May 29, 2012) (citing *Jones v. Cunningham*, 371 U.S. 236, 243 (1963) (holding that a state prisoner who has been placed on parole is "in custody" for purposes of habeas statute)).

[2]    Petitioner's charges in all counties were resolved in a global plea agreement negotiated by his Sumner County counsel, who was Petitioner's primary attorney for all purposes relevant to his habeas petitions (which only assert ineffective-assistance-of-counsel claims). Accordingly, references in this Memorandum Opinion to the record of state-court proceedings, as well as to the record of the parties' filings (which are substantially identical across Petitioner's three cases but were entered on the various dockets with slight differences in numbering) will correspond to the docket of Case No. 3:18-cv-00112, the action attacking Petitioner's Sumner County convictions and the lead case for these purposes.

related to this judgment of conviction, and that the claims of the Petition have been exhausted. (Doc. No. 14 at 1–2.) Having reviewed Petitioner's arguments and the underlying record, the Court finds that an evidentiary hearing is not required. As explained below, Petitioner is not entitled to relief under Section 2254, and his Petition will therefore be denied by Order entered contemporaneously with this Memorandum Opinion.

## I. BACKGROUND

A. <u>Proceedings in the Trial Court and on Direct Appeal</u>

Petitioner was indicted in 2009 along with numerous co-defendants including his brother, Kasey King, on a litany of charges related to his participation in a drug ring operating in Davidson, Sumner, Rutherford, Wilson, and Cheatham Counties in Tennessee. After dismissal of the charges in Wilson and Cheatham Counties, the case against Petitioner was approved for prosecution in the remaining three Counties by Davidson County Assistant District Attorney General John Zimmerman. Petitioner retained Nashville lawyer Kimberly S. Hodde to represent him in the Sumner County case. He was appointed counsel in the Davidson and Rutherford County cases, though these lawyers deferred to Hodde as primary counsel for purposes of constructing Petitioner's defense, arguing for suppression of the evidence against him, and conducting plea negotiations. (*See* Doc. No. 12-64 at 12–20.)

The case against Petitioner, including multiple charges of possession and delivery of large amounts of marijuana, money laundering, and related charges of conspiracy, was largely based upon evidence obtained through a large-scale wiretap investigation. Between October 7 and 10, 2008, law enforcement applied for four wiretaps which Davidson County Judge Mark Fishburn authorized: two on cellphones belonging to Bruce Dady, one on a cellphone belonging to Petitioner, and one on a cellphone belonging to Vernon Lockhart. These wiretap applications were

2

"substantially similar," and the wiretaps formed the foundation of an investigation that would grow to include 23 wiretaps and 24 wiretap extensions. *State v. King*, 437 S.W.3d 856, 860–62 (Tenn. Crim. App. 2013), *perm. app. denied* (Tenn. Feb. 12, 2014).

On July 26, 2010, Hodde (hereinafter, "counsel") moved to suppress the wiretap evidence in Sumner County. (Doc. No. 12-3 at 22–91.) Substantially identical motions to suppress were also filed in Davidson and Rutherford Counties. The motions to suppress argued that the wiretaps were not properly authorized under the relevant Tennessee statute, which provides as follows:

> Upon an application the judge may enter an ex parte order, as requested or as modified, authorizing interception of wire, oral or electronic communications within the district in which the judge is sitting, and outside that district but within this state in the case of a mobile interception device, if the judge determines on the basis of the facts submitted by the applicant that:
>
> (1) There is probable cause for belief that an individual is committing, has committed, or is about to commit a particular offense enumerated in § 40-6-305;
>
> (2) There is probable cause for belief that particular communications concerning that offense will be obtained through the interception;
>
> (3) Normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous; and
>
> (4) There is probable cause for belief that the facilities from which, or the place where, the wire, oral or electronic communications are to be intercepted are being used, or about to be used, in connection with the commission of the offense, or are leased to, listed in the name of, or commonly used by the person.

Tenn. Code Ann. § 40-6-304(c). The Sumner County court held an evidentiary hearing on Petitioner's motion to suppress (Doc. No. 12-44) and subsequently denied it (Doc. No. 12-4 at 22–38), as did the courts in Davidson County (Doc. No. 12-2 at 20–52) and Rutherford County (Doc. No. 12-6 at 4–10). Unlike the Davidson and Rutherford County courts, the Sumner County court heard and granted Petitioner's motion for permission to file an interlocutory appeal from its

suppression ruling (Doc. No. 12-45), but the Tennessee Court of Criminal Appeals subsequently declined review, as did the Tennessee Supreme Court. (Doc. Nos. 12-46, 12-47.)

Thereafter, pursuant to a global plea agreement, Petitioner entered conditional guilty pleas in each county.[3] Under the plea agreement, all charges in all counties[4] were resolved with an overall effective sentence of 40 years, to be served as a Range II, multiple offender at 35% release eligibility. (Doc. No. 12-64 at 19; Doc. No. 12-4 at 40–52.) In conjunction with the guilty pleas, and pursuant to Tennessee Rule of Criminal Procedure 37(b)(2), Petitioner reserved the following certified questions of law for appellate review:

> In the trial court, the Defendant moved to suppress the fruits of electronic surveillance on numerous grounds: (1) that the initial wiretap Applications lacked probable cause to justify interception in violation of T.C.A. §§ 40–6–304(c) and 40–6–305, specifically including the Applications' failure to demonstrate the statutorily required nexus between the phone to be intercepted and the alleged illegal activity sought to be intercepted; (2) that the initial Applications failed to demonstrate a constitutionally sufficient requisite necessity for the use of electronic surveillance pursuant to T.C.A. § 40–6–304(a)(3) and 18 U.S.C. § 2518(1)(c); (3) that all subsequent wiretaps were the fruits of the prior illegal wiretap interceptions and therefore, were fruits of the poisonous tree; (4) that the notarized but unsigned

---

[3]     It appears that all defendants in this multi-county prosecution pled guilty except Lockhart. The Court takes judicial notice that, after a jury trial in Davidson County, Lockhart was sentenced to an effective 94-year prison term upon being convicted of the following offenses: conspiracy to sell 300 pounds or more of marijuana within a drug-free school zone, possession of 300 pounds or more of marijuana with intent to deliver within a drug-free school zone, ten counts of money laundering, possession of ten pounds or more of marijuana with intent to deliver within a drug-free school zone, and facilitation of possession of ten pounds or more of marijuana with intent to deliver. *See State v. Lockhart*, No. M2013-01275-CCA-R3-CD, 2015 WL 5244672, at *1 (Tenn. Crim. App. Sept. 8, 2015); *see also* Doc. No. 12-64 at 119–23 (colloquy at evidentiary hearing with regard to potential effect of Lockhart's conviction, sentence, and appeal if Petitioner were to win post-conviction relief).

[4]     In Sumner County, Petitioner pled guilty to conspiracy to possess over 70 pounds of marijuana, delivery of over 10 pounds of marijuana, possession of over 70 pounds of marijuana, delivery of over 10 pounds of marijuana, delivery of over 10 pounds of marijuana, possession of a firearm during the commission of a felony, and seven counts of money laundering. (Doc. No. 12-4 at 40–52.) In Davidson County, Petitioner pled guilty to conspiracy to sell over 300 pounds of marijuana, two counts of conspiracy to commit money laundering, delivery of over 70 pounds of marijuana, two counts of money laundering, delivery of over 10 pounds of marijuana, possession of over 10 pounds of marijuana with intent to sell, possession of over 300 pounds of marijuana with intent to sell, and criminal forfeiture. (Doc. No. 12-2 at 92–103.) In Rutherford County, Petitioner pled guilty to conspiracy to sell over 70 pounds of marijuana and possession of over 70 pounds of marijuana. (Doc. No. 12-5 at 149–50.)

4

affidavit requesting a second extension of the wiretap for telephone number (615) 584–6075 was statutorily deficient to support interception; (5) that, in addition to being a fruit of the prior illegal interceptions, the subsequent interception of telephone (615) 653–2294 lacked probable cause to justify interception in violation of T.C.A. §§ 40–6–304(c) and 40–6–305 because they [sic] failed to make a sufficient link between the phone and suspected criminal activity or the targets of the investigation; (6) that, in addition to being a fruit of the prior illegal interceptions, the subsequent interception of telephone (615) 818–2839 lacked probable cause to justify interception in violation of T.C.A. §§ 40–6–304(c) and 40–6–305 because they [sic] failed to make a sufficient link between the phone and suspected criminal activity or the targets of the investigation; (7) that the Applications for extensions of the wiretaps failed to articulate a statutorily sanctioned purpose justifying continuing interception; (8) that the issuing Court neglected its duty as a neutral and detached magistrate and acted as an impermissible rubber stamp for law enforcement; and, (9) that the Applications contain omissions and material misstatements that undercut any showing of requisite necessity for the wiretaps.

*King*, 437 S.W.3d at 863–64.[5] Petitioner then filed timely appeals in each county for consideration of these issues.

The Tennessee Court of Criminal Appeals consolidated all cases in all counties against Petitioner and his brother for purposes of appeal. *Id.* at 864. The court determined that several of the certified questions were not dispositive and thus unreviewable; it found dispositive, and thus reviewed, four of the nine questions presented. *Id.* at 867–89. Specifically, the appellate court reviewed the questions of whether the wiretap applications provided a substantial basis for probable cause in accordance with the standard recited at Tennessee Code Annotated § 40–6–304(c)(4); whether the wiretap applications satisfied the requisite necessity requirement found at § 40–6–304(a)(3); whether the wiretap applications contained errors that invalidated the applications; and whether subsequent wiretaps and wiretap extensions were illegal as fruits of the poisonous tree. *Id.* at 870–86. In addressing the first of these questions, the Court of Criminal Appeals made the following clarification:

---

[5]     These certified questions were also reserved in the conditional plea entered by Petitioner's brother, who pled guilty to charges in Davidson and Rutherford Counties. *King*, 437 S.W.3d at 863.

5

Although the first of the Defendants' certified questions refers specifically only to "the statutorily required nexus between the phone to be intercepted and the alleged illegal activity sought to be intercepted," the Defendants clarify in their reply brief that the "heart" of their probable cause challenge is that "[t]he State never conducted consensually monitored and recorded calls to any of the target telephones to discuss any target offense or criminal conduct." That is, the Defendants contend that the State failed to satisfy the nexus requirement set forth in subsection (c)(4) of the Wiretap Statute, which requires probable cause to believe that the targeted telephone is "being used, or [is] about to be used, in connection with the commission of the offense." Tenn. Code Ann. § 40–6–304(c)(4). As our supreme court has emphasized, "[n]o issue beyond the scope of the certified question will be considered." *State v. Preston*, 759 S.W.2d 647, 650 (Tenn. 1988); *see also State v. Day*, 263 S.W.3d 891, 899–900 (Tenn. 2008) (limiting its consideration to the "narrow issue" presented explicitly in the certified question and emphasizing "[o]nce again ... the importance of clearly identifying the scope and limits of an issue intended to be preserved by a certified question"). Therefore, we decline to address any potential contention that there was no "probable cause for belief that particular communications concerning [the] offense will be obtained through the interception." Tenn. Code Ann. § 40–6–304(c)(2).

*Id.* at 867 n.14. The Court of Criminal Appeals then reviewed the suppression rulings of the lower courts, as follows:

The Rutherford County trial court found that "the relevant wiretap applications contained sufficient information to support Judge Fishburn's finding of probable cause that targets were committing, had committed, or were about to commit a crime included in Tenn.Code Ann. § 39–17–417(j)(13)" and that the Issuing Court "had a substantial basis to believe that [Defendant J. King] was using these phones [sic] in furtherance of his criminal operation."

The Sumner County trial court rejected the Defendants' argument that subsection (c)(4) required probable cause to believe that the targeted telephone number was being used to commit the Target Crimes and, instead, focused on the alternative probable cause requirement, that there be probable cause to believe that the targeted telephone number was "leased to, listed in the name of, or commonly used by" the targeted person. Tenn. Code Ann. § 40–6–304(c)(4). *Cf. United States v. Dadanovic*, Criminal No. 09–63–ART, 2010 WL 3620251, at *9 (E.D. Ky. Sept. 10, 2010) (recognizing that the federal counterpart to this provision "is satisfied *either* if 1) the phone is being used by someone in connection with the offense *or* 2) it is commonly used by an individual who 'is committing, has committed, or is about to commit a particular offense'") (citing 18 U.S.C. § 2518(3)(d)) (emphases added). The Sumner County trial court ruled that "[t]he Applications clearly show that the original Application's phones were listed in the name of the Targets' wives, and the Pen Registers showed that these phones were being used by the targets in communication with the other conspirators."

6

The Davidson County trial court, like the Rutherford County trial court, ruled that the Applications sufficiently established probable cause to believe that the targeted telephones were being used to commit the Target Crimes:

> The information in the Applications provided the issuing judge a substantial basis to find probable cause that interception of the target phones would provide evidence of the conspiracy. As [indicated by pen register statistics], target suspects made a high volume of calls to other suspected co-conspirators between the July–September 2008 time period [covered by the pen register]. For example: the Application for Lockhart's telephone cited that there were 401 calls between Lockhart and Jeffrey King and 480 calls between Lockhart and [Cheyenne] Davis within the three-month period; the Application for Jeffrey King's phone cited 336 calls between Jeffrey King and Kasey King and 178 calls between Jeffrey King and Dady for that same period. . . . The Sixth Circuit, among other federal courts, has concluded that where "there is a recurring pattern of multiple connections among the phone calls, between and among recognized members of the conspiracy ... [it] adds to the evidence amounting to 'a fair probability' that interception of further calls would reveal evidence of a crime." *United States v. Alfano*, 838 F.2d 158, 162 (6th Cir. 1988) (reversed District Court's decision granting suppression motion)[.]

> Accordingly, the Court finds that each [of] the initial four applications speak for themselves and the four corners of the initial four applications provide probable cause for the interception.

As the Defendants apparently do, we construe the Davidson County trial court's finding that the [four] Initial Applications were sufficient on which to "find probable cause that interception of the target phones would provide evidence of the conspiracy," the probable cause requirement set forth in (c)(2), as including a finding that the target phones were being used to commit the conspiracy, one of the probable cause requirements set forth in (c)(4).

*King*, 437 S.W.3d at 867–68.

The Court of Criminal Appeals proceeded to find that Petitioner was not entitled to relief on any certified question presented and that the courts below did not err in denying his motions to suppress the wiretap evidence; it thus affirmed Petitioner's convictions. *See id.* at 889.

On February 12, 2014, the Tennessee Supreme Court declined to review the case.

**B. Post-Conviction Proceedings**

Petitioner filed timely petitions for post-conviction relief in all three counties. (*See* Doc. No. 12-62 at 3–11.) Petitioner retained post-conviction counsel, who filed the same memorandum of law in support of the claims raised in Petitioner's pro se petition in all counties (*see id.* at 16–42) as well as supplements to the petition in Davidson and Sumner Counties. Each of the three post-conviction courts denied relief after holding an evidentiary hearing. Petitioner appealed those rulings to the Tennessee Court of Criminal Appeals. In separate decisions which employ virtually identical language, the Court of Criminal Appeals affirmed the denial of post-conviction relief, and the Tennessee Supreme Court subsequently declined discretionary review in all three cases. *King v. State*, No. M2016-02166-CCA-R3-PC, 2017 WL 3974093 (Tenn. Crim. App. Sept. 8, 2017), *perm. app. denied* (Tenn. Nov. 16, 2017); *King v. State*, No. M2016-01224-CCA-R3-PC, 2017 WL 2805200 (Tenn. Crim. App. June 28, 2017), *perm. app. denied* (Tenn. Oct. 4, 2017); *King v. State*, No. M2016-01646-CCA-R3-PC, 2017 WL 2805202 (Tenn. Crim. App. June 28, 2017), *perm. app. denied* (Tenn. Oct. 4, 2017).[6]

The Tennessee Court of Criminal Appeals described Petitioner's post-conviction petition and evidentiary hearing as follows:

> The Petitioner then filed a petition for post-conviction relief, pro se, in which he alleged that he had received the ineffective assistance of counsel and that his guilty pleas were not knowingly and voluntarily entered. He argued that counsel was ineffective for failing to address on appeal the legality of Tennessee Code Annotated section 40–6–304(c)(2). He further argued that he entered his guilty pleas under the impression that his nine certified questions would be addressed in turn by the appellate court, would be deemed dispositive because of the agreement of the parties, and that a determination in his favor on any of the questions would result in his convictions being reversed. The post-conviction court appointed an attorney and subsequently held a hearing, during which the following evidence was

---

[6]     Because the language is the same in all three appellate decisions, the Court will for simplicity's sake refer hereinafter only to the post-conviction decision of the Court of Criminal Appeals in the case out of Sumner County, *King v. State*, No. M2016-02166-CCA-R3-PC, 2017 WL 3974093 (Tenn. Crim. App. Sept. 8, 2017).

8

presented: Counsel testified that she worked as a criminal defense attorney for fifteen years and had handled hundreds of drug cases throughout her career. She stated that she had dealt with eighty to one hundred cases that had wiretapping issues and that she had "actively litigated" forty to fifty wiretap cases. She testified that she was "very experienced" at the time she represented the Petitioner. Counsel recalled that the Petitioner was charged in multiple counties and that she represented him in Sumner County and assisted with his representation in the other counties (hereinafter "Sumner Counsel"). Sumner Counsel was the Petitioner's primary attorney, and she stated that the Sumner County case "took the lead" over the Rutherford County and Davidson County cases.

Sumner Counsel testified that she spent a "tremendous" amount of time with the Petitioner and had a very good working relationship with him. She was his "primary point of contact" for his cases, and the majority of the litigation happened in Sumner County where she represented him. Sumner Counsel spoke with the attorneys in the Petitioner's other cases, and they met jointly with the Petitioner on occasion. Sumner Counsel described the Petitioner as a "profoundly smart guy" who wanted to be involved in his case and participate in his defense. As such, Sumner Counsel had many discussions with him about the litigation strategy over the course of an estimated seventy-five meetings. Sumner Counsel arranged for the Petitioner to have access to a computer while incarcerated on which he reviewed his discovery file. She felt that the Petitioner "trusted [Sumner Counsel's] judgment," although she recalled that he had a somewhat strained relationship with another of his attorneys.

Regarding the Petitioner's direct appeal, Sumner Counsel testified that all of the Petitioner's cases were consolidated and that she wrote the appellate brief and argued the case. About the plea negotiations with the State, Sumner Counsel recalled that the State made an initial offer that "may have been forty [years] at thirty percent" but that a certified question was not included in the deal. Lengthy negotiations followed because the State insisted that the Petitioner plead guilty in multiple counties, which Sumner Counsel felt was unnecessary and excessive. Sumner Counsel also recalled that the State made an offer in exchange for the Petitioner's cooperation as a witness, and the Petitioner did not want to cooperate.

Regarding the certified questions of law in relation to the wiretap issue, Sumner Counsel said that this was "incredibly important" to the Petitioner because he felt very strongly that the wiretaps were unlawful. The Petitioner understood, and the State agreed, that without the wiretap evidence, the State's case would essentially have to be dismissed. As a result, the wiretap issue was also "incredibly important to [Sumner Counsel] legally." She agreed that if the certified questions had not been a part of the plea deal, the Petitioner would not have accepted the deal. She stated that the "certified question[s] were the enticing factor for that plea deal for [the Petitioner]."

Turning back to her representation of the Petitioner, Sumner Counsel recalled that she reviewed with the Petitioner "every bit" of the discovery. Based on the State's evidence, she and the Petitioner "knew collectively that if we went to trial we were in trouble." "[The Petitioner's] perspective, he knew that if he went to trial he would be convicted." Sumner Counsel had prepared documentation of the Petitioner's maximum potential exposure if he was convicted by a jury, and it was ninety years or more with much of the sentence to be served at 100 percent because of school zone enhancements. Sumner Counsel stated:

> [I]t was very important to [the Petitioner] that the certified question[s] be heard. And my advice would have been to him, although I thought the [State's] offer was terrible and I thought it was way too much time in the case, . . . we didn't have a lot of choices, those were our choices. . . . But with the certified question[s] I really felt strongly that he should consider the offer. It gave him what he wanted, gave him the opportunity to be heard on appeal on these issues, and it gave him some control of his future in the sense of a definitive resolution.

Sumner Counsel stated that she was not a "seller" of plea agreements and believed that a case should go to trial if a defendant so desired. She stated that she never pressured clients to give up their right to a trial. About the motion to suppress the wiretaps, Sumner Counsel felt strongly that the wiretaps were unlawful and that everything that flowed from the wiretaps should be suppressed. Sumner Counsel recalled that she reviewed each wiretap and made an independent judgment on each one as to whether to file a motion to suppress.

Turning back to the certified questions of law, Sumner Counsel recalled that she was in discussion with the State for four to six weeks about the question. She was "very concerned about the trickiness of a certified question" because the appellate court was "notorious for finding ways not to hear certified questions," and she told the Petitioner that she had been "a victim" of that occurrence on more than one occasion. As such, Sumner Counsel "cautioned" the Petitioner about the "tricky process from a procedural perspective." The State agreed to the submission of a certified question of law, and the State allowed Sumner Counsel flexibility as to how to craft the question. The Petitioner and Sumner Counsel discussed the certified questions and what issues to include. Sumner Counsel "knew" that some of the nine questions were not dispositive, while some of the others were. Sumner Counsel explained the risk to the Petitioner that the appellate court might find certain ones were not dispositive and would decide not to rule on them for this reason. She advised him that there was "an equal chance" that the appellate court would go ahead and rule on the questions even if they were not dispositive. She testified, however, that the main certified questions were dispositive, and if the appellate court ruled in the Petitioner's favor on those main questions, the case would "disappear" for the Petitioner.

Sumner Counsel acknowledged the complexities involved with a certified question of law and stated that, even though she thought the Petitioner was a very intelligent person, she knew that the procedural process for review of a certified question was difficult to understand. She took plenty of time to discuss the complexities with the Petitioner but could not say whether he was able to understand or absorb them. When asked if Sumner Counsel thought the Petitioner might have gotten a different impression than she had from their discussions, she replied, "It's possible."

About the first certified question, whether "the initial wiretap Applications lacked probable cause to justify interception in violation of T.C.A. §§ 40–6–304(c) and 40–6–305, specifically including the Applications' failure to demonstrate the statutorily required nexus between the phone to be intercepted and the alleged illegal activity sought to be intercepted[,]" Sumner Counsel agreed that the appellate court addressed this question but declined to rule on several of the requirements of subsection (c) of the statute based on what it deemed Sumner Counsel's narrowing of the issue to subsection (c)(4) in the reply brief. Sumner Counsel disagreed with this, saying that she had focused on one prong, (c)(4), in her reply brief because of the State's argument in its response brief but had thoroughly briefed the issue on all subsection (c). She stated that she had no regrets about the way she briefed the issue and that she had done so thoroughly but that the argument was hurt by the appellate court's limited analysis. As to this argument, and every other aspect of the case, Sumner Counsel told the Petitioner that she could not guarantee the outcome at any stage. Sumner Counsel testified that the Petitioner was upset after the appellate court issued its opinion finding many of the questions were not dispositive and declining to rule on the merits of those it deemed not dispositive. The Petitioner was upset with Sumner Counsel for taking away his avenue of appeal.

On cross-examination, Sumner Counsel reiterated that the Petitioner was very active in his case and asked a lot of questions. Based on his questions, Sumner Counsel felt the Petitioner had a good understanding of the case and his right to a jury trial. Sumner Counsel believed that the Petitioner understood he was giving up his right to a jury trial by deciding to plead guilty with certified questions reserved. She testified that he understood that if he proceeded to trial, his risk of conviction was great but that he would retain his right to appeal every issue. Sumner Counsel reiterated that she explained to the Petitioner the risk of dismissal on the "front end" of the certified questions because of a mistake in the "paperwork" but told him that she was confident that would not happen because she had successfully pursued certified questions recently and had done so successfully on the "paperwork" side of it. She did discuss the "other hazards" of a certified question, including the issue of "calling" something dispositive when it was not and how the appellate court would decline to rule in that situation. She discussed with the Petitioner the risk of putting his case in the "Court of Criminal Appeals' hands" versus putting it in the hands of a jury and the difference between a ninety-plus-year sentence with an automatic right to appeal versus a shorter sentence with some risks on appeal because of the certified question. Sumner Counsel gave the Petitioner her best

forecast as to how each scenario might play out; however, she stated that she could not have forecasted that the appellate court would conclude that she had narrowed the first issue in her brief and then decline to rule on it; this issue, she felt, was the "heart" of the case. The appellate briefs drafted by Sumner Counsel were admitted into the record as exhibits.

The Petitioner's Davidson County attorney (hereinafter "Davidson Counsel") testified that he represented the Petitioner on the Davidson County charges. He filed a motion to suppress the wiretap evidence by tailoring Sumner Counsel's motion to the facts in Davidson County. He also observed the suppression hearing held in Sumner County, argued by Sumner Counsel, where he "learned a lot" about a case such as this one involving large amounts of drugs over a long period of time. Davidson Counsel testified that he did not make any substantive changes to Sumner Counsel's motion; however, he did litigate the motion himself. Davidson Counsel recalled that he did not meet with the Petitioner independently from Sumner Counsel and stated that they met jointly with the Petitioner three or four times. The Petitioner "made it clear" to Davidson Counsel that the Petitioner thought Sumner Counsel was more knowledgeable and he was more interested in her opinion on the law. Davidson Counsel willingly assumed the role of "second fiddle."

As for the certified questions reserved in the Petitioner's Davidson County plea, Davidson Counsel testified that Sumner Counsel offered to draft the certified questions, and he accepted her offer. Davidson Counsel recalled attending a meeting with the Petitioner and Sumner Counsel about a possible plea deal, and the Petitioner expressed that he was not happy with the State's offer. The Petitioner and Sumner Counsel discussed "the pros and cons" of proceeding to trial, and Davidson Counsel offered his opinion that, based on his prior dealings in Davidson County Criminal Court, this amount of drugs often resulted in the maximum sentence. Davidson Counsel recalled that he initiated discussions about a reduction of the plea offer sentence, but the State declined and expressed its desire for the Petitioner to turn down the State's offer and proceed to trial. Davidson Counsel agreed that the plea deal encompassing all three counties was a "package deal" from the outset and was never going to be anything other than a global settlement. Davidson Counsel agreed that he had nothing to do with the certified questions or the appellate issues.

Davidson Counsel agreed that the Petitioner was motivated to enter a guilty plea because of the certified questions and that Sumner Counsel felt strongly that if the appellate court addressed the certified questions, the Petitioner would be granted relief. The Petitioner was otherwise "reluctant" to enter a guilty plea. Davidson Counsel stated that Sumner Counsel was confident that the Petitioner would win on appeal but agreed that there were "prerequisites" to her confidence. He stated, "The qualifiers were there," pertaining to Sumner Counsel's predictions of success on appeal.

The Petitioner testified that Sumner Counsel's testimony regarding their relationship was accurate. The Petitioner retained her on the recommendation of another attorney that she was the premier wiretap lawyer in the State. The Petitioner agreed that Sumner Counsel was very knowledgeable, although his reading of some of the wiretap law differed from hers. The Petitioner stated that he was amenable to Sumner Counsel being the lead counsel for all the suppression hearings, meaning her legal work was used by his other attorneys in the other counties.

Regarding the certified questions, the Petitioner agreed that he had no knowledge of the law or procedure surrounding them and was reluctant to take the plea deal because he was giving up his right to appeal many issues that were not included in the certified questions. The Petitioner acknowledged that he was exposed to lengthy sentences in the three counties but that it was more important to him to have his issues heard on appeal. Sumner Counsel explained to him that certified questions of law are "particular" in the way they are drafted and that it can be difficult to prevail in an appellate court or even have them considered. The Petitioner recalled that Sumner Counsel had modeled the certified questions for his case from certified questions she had successfully used in another case. The Petitioner understood that all of the certified questions would be heard and that they were each deemed dispositive by agreement of the Petitioner, the State, and the trial court. Sumner Counsel did not tell the Petitioner that all of the questions were dispositive, but the Petitioner did not know at the time that the appellate court would be making an independent conclusion about whether a question was dispositive before review on the merits. The Petitioner believed that the "barrier" was getting the State and the trial court to agree, not the appellate court. He was not aware that the appellate court could "divide" the questions and deem some dispositive and others not.

The Petitioner testified that he became more knowledgeable on the wiretap law and certified question procedure and that he did not agree with the way Sumner Counsel framed her argument about the wiretap statute in the appellate brief. The Petitioner testified that he did not feel that Davidson Counsel was prepared for the suppression hearing because he used Sumner Counsel's motion and did not do the research himself or prepare independently. The Petitioner acknowledged that Sumner Counsel's appellate argument employed federal law and that this was a case of first impression at the state level. Regarding the drafting of the certified questions, the Petitioner testified that he was present and had input but that the majority of them were drafted by Sumner Counsel.

On cross-examination, the Petitioner testified that he did not knowingly enter his guilty plea because he would have chosen to go to trial if he had known that the agreement of the parties was not sufficient to guarantee a finding that the questions were dispositive and would be considered. He agreed that at the guilty plea submission hearing, he was asked if he wished to waive his right to trial and that he affirmed that he did.

The Petitioner's Rutherford County attorney (hereinafter "Rutherford Counsel") testified that the Petitioner's charges in Rutherford County were not as serious as the other counties. He stated that most of his contact with the other attorneys was with Sumner Counsel and that the Petitioner wanted him to follow Sumner Counsel's lead with regard to the wiretap issues. His understanding was that all the defenses in the various counties were based on one theory that Sumner Counsel had researched and prepared. Rutherford Counsel recalled that in Rutherford County the Petitioner entered a plea to an A or B felony with a forty-year sentence to be served at 30 percent. He stated that the Petitioner was not happy about the plea or the sentence, but he agreed to enter the plea in order to have appellate review of his certified questions of law. Rutherford Counsel agreed that Sumner Counsel prepared the certified questions of law and that he made no substantive changes.

*King v. State*, No. M2016-01224-CCA-R3-PC, 2017 WL 2805200, at *3–7 (Tenn. Crim. App. June 28, 2017).

After he was denied post-conviction relief in state court, Petitioner filed his pro se Petitions under Section 2254 in this Court.

## II. CLAIMS OF THE PETITION

Petitioner's pro se Petitions assert seven claims of ineffective assistance of counsel in violation of the Sixth Amendment.[7] These claims rely on:

(1) counsel's failure to ensure that all certified questions were dispositive or that all dispositive issues were included in those questions, or to inform him that the Court of Criminal Appeals could deem any certified question non-dispositive and thus decline to address it;

(2) counsel's failure, in briefing the certified questions before the Court of Criminal Appeals, to assert effectively her argument under Tenn. Code Ann. § 40-6-304(c)(2), thereby allowing the Court of Criminal Appeals to deem the argument waived;

---

[7] Petitioner's ineffective-assistance claims identify failures of Attorney Hodde, who "did all the research and work for each county of which all of the other attorneys essentially adopted without having done their own research . . . ." (Doc. No. 2 at 17.) Thus, to the extent that Petitioner claims that counsel other than Hodde were ineffective, any such claim is based on deficient performance imputed to those lawyers from Hodde's alleged failures.

14

(3) counsel's failure before the trial court to assert the wiretap application's failure to establish probable cause to believe that interceptions of Petitioner's cellphone would reveal particular communications concerning a charged offense, as required by Section 40-6-304(c)(2), rather than merely that a high volume of calls was made to co-conspirators from Petitioner's cellphone;

(4) counsel's failure to argue adequately for suppression or raise a proper certified question based on the trial court's acting as a rubber stamp for the prosecution's wiretap applications;

(5) counsel's failure to know or advise him properly that the plea agreement offered by the state required him to admit guilt on certain charges that the state could not otherwise have won conviction on, including (a) separate conspiracy charges in each of the three counties based on the same evidence, which could only have been used to show the existence of a single conspiracy; and (b) charges of money laundering, when his admitted conduct did not suffice to establish all statutory elements of the crime;

(6) counsel's failure to seek the dismissal of the prosecution or the disqualification of the prosecutor based on his conflict of interest in representing the State in both the criminal prosecution and in civil forfeiture proceedings, where the prosecutor sought the forfeiture of Petitioner's assets for the benefit of the 20th Judicial Drug Task Force; and

(7) counsel's failure to challenge the prosecution's retaliatory filing of charges in multiple counties and targeting of assets for forfeiture when those assets were not involved with illegal activity.

(Doc. No. 2 at 30–75; Doc. No. 22 at 3–4.)

## III. LEGAL STANDARD

The statutory authority of federal courts to issue habeas corpus relief for persons in state custody is provided by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). A federal court may grant habeas relief to a state prisoner "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Upon finding a constitutional error on habeas corpus review, a federal court may only grant relief if it finds that the error "had substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993); *Peterson v. Warren*, 311 F. App'x 798, 803–04 (6th Cir. 2009).

AEDPA was enacted "to reduce delays in the execution of state and federal criminal sentences, particularly in capital cases . . . and 'to further the principles of comity, finality, and federalism.'" *Woodford v. Garceau*, 538 U.S. 202, 206 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 436 (2000)). AEDPA's requirements "create an independent, high standard to be met before a federal court may issue a writ of habeas corpus to set aside state-court rulings." *Uttecht v. Brown*, 551 U.S. 1, 10 (2007) (citations omitted). As the Supreme Court has explained, AEDPA's requirements reflect "the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Harrington v. Richter*, 562 U.S. 86, 102–03 (2011) (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979)). Where state courts have ruled on a claim, AEDPA imposes "a substantially higher threshold" for obtaining relief than a de novo review of whether the state court's determination was incorrect. *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) (citing *Williams v. Taylor*, 529 U.S. 362, 410 (2000)).

16

Specifically, a federal court may not grant habeas relief on a claim rejected on the merits in state court unless the state decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1), (d)(2). A state court's legal decision is "contrary to" clearly established federal law under Section 2254(d)(1) "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. at 412–13. An "unreasonable application" occurs when "the state court identifies the correct legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. A state court decision is not unreasonable under this standard simply because the federal court finds it erroneous or incorrect. *Id.* at 411. Rather, the federal court must determine that the state court's decision applies federal law in an objectively unreasonable manner. *Id.* at 410–12.

Similarly, a district court on habeas review may not find a state court factual determination to be unreasonable under Section 2254(d)(2) simply because it disagrees with the determination; rather, the determination must be "'objectively unreasonable' in light of the evidence presented in the state court proceedings." *Young v. Hofbauer*, 52 F. App'x 234, 236 (6th Cir. 2002). "A state court decision involves 'an unreasonable determination of the facts in light of the evidence presented in the State court proceeding' only if it is shown that the state court's presumptively correct factual findings are rebutted by 'clear and convincing evidence' and do not have support in the record." *Matthews v. Ishee*, 486 F.3d 883, 889 (6th Cir. 2007) (quoting Section 2254(d)(2) and (e)(1)); *but see McMullan v. Booker*, 761 F.3d 662, 670 & n.3 (6th Cir. 2014) (observing that

17

the Supreme Court has not clarified the relationship between (d)(2) and (e)(1) and the panel did not read *Matthews* to take a clear position on a circuit split about whether clear and convincing rebutting evidence is required for a petitioner to survive (d)(2)). Moreover, under Section 2254(d)(2), "it is not enough for the petitioner to show some unreasonable determination of fact; rather, the petitioner must show that the resulting state court decision was 'based on' that unreasonable determination." *Rice v. White*, 660 F.3d 242, 250 (6th Cir. 2011).

The standard set forth in 28 U.S.C. § 2254(d) for granting relief on a claim rejected on the merits by a state court "is a 'difficult to meet' and 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt.'" *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (quoting *Richter*, 562 U.S. at 102, and *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam)). Petitioner bears the burden of proof. *Pinholster*, 563 U.S. at 181.

Even that demanding review, however, is ordinarily only available to state inmates who have fully exhausted their remedies in the state court system. 28 U.S.C. §§ 2254(b) and (c) provide that a federal court may not grant a writ of habeas corpus on behalf of a state prisoner unless, with certain exceptions, the prisoner has presented the same claim sought to be redressed in a federal habeas court to the state courts. *Pinholster*, 563 U.S. at 182; *Kelly v. Lazaroff*, 846 F.3d 819, 828 (6th Cir. 2017) (quoting *Wagner v. Smith*, 581 F.3d 410, 417 (6th Cir. 2009)) (petitioner must present the "same claim under the same theory" to the state court). This rule has been interpreted by the Supreme Court as one of total exhaustion, *Rose v. Lundy*, 455 U.S. 509 (1982), meaning that each and every claim set forth in the federal habeas corpus petition must have been presented

to the state appellate court.[8] *Picard v. Connor*, 404 U.S. 270 (1971); *see also Pillette v. Foltz*, 824 F.2d 494, 496 (6th Cir. 1987) (exhaustion "generally entails fairly presenting the legal and factual substance of every claim to all levels of state court review"). Moreover, the substance of the claim must have been presented as a federal constitutional claim. *Gray v. Netherland*, 518 U.S. 152, 162–63 (1996).

The procedural default doctrine is ancillary to the exhaustion requirement. *See Edwards v. Carpenter*, 529 U.S. 446 (2000) (noting the interplay between the exhaustion rule and the procedural default doctrine). If the state court decides a claim on an independent and adequate state ground, such as a procedural rule prohibiting the state court from reaching the merits of the constitutional claim, a petitioner ordinarily is barred from seeking federal habeas review. *Wainwright v. Sykes*, 433 U.S. 72, 81–82 (1977*); see also Walker v. Martin*, 562 U.S. 307, 315 (2011) ("A federal habeas court will not review a claim rejected by a state court if the decision of the state court rests on a state law ground that is independent of the federal question and adequate to support the judgment"); *Coleman v. Thompson*, 501 U.S. 722 (1991) (same).  If a claim has never been presented to the state courts, but a state court remedy is no longer available (e.g., when an applicable statute of limitations bars a claim or state law deems the claim waived),[9] then the claim is technically exhausted, but procedurally barred. *Coleman*, 501 U.S. at 731–32.

---

[8]  In Tennessee, the Court of Criminal Appeals is the highest appellate court to which appeal must be taken in order to properly exhaust a claim. *See* Tenn. Sup. Ct. R. 39; *Adams v. Holland*, 330 F.3d 398, 402–03 (6th Cir. 2003).

[9]  The Tennessee Post-Conviction Procedure Act provides that "[i]n no event may more than one (1) petition for post-conviction relief be filed attacking a single judgment," and establishes a one-year statute of limitations for filing that one petition. Tenn. Code Ann. § 40-30-102(a) and (c). The Act further provides that "[a] ground for relief is waived if the petitioner personally or through an attorney failed to present it for determination in any proceeding before a court of competent jurisdiction in which the ground could have been presented," unless that ground could not be presented due to unconstitutional state action, or is based on a new and retroactive constitutional right that was not recognized at the time of trial. *Id.* § 40-30-106(g).

If a claim is procedurally defaulted, "federal habeas review of the claim is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750. The burden of showing cause and prejudice to excuse defaulted claims is on the habeas petitioner. *Lucas v. O'Dea*, 179 F.3d 412, 418 (6th Cir. 1999) (citing *Coleman*, 501 U.S. at 754). "'[C]ause' under the cause and prejudice test must be something external to the petitioner, something that cannot fairly be attributed to him[;] . . . some objective factor external to the defense [that] impeded . . . efforts to comply with the State's procedural rule." *Coleman*, 501 U.S. at 753 (emphasis in original). Examples of cause include the unavailability of the factual or legal basis for a claim or interference by officials that makes compliance "impracticable." *Id.* To establish prejudice, a petitioner must demonstrate that the constitutional error "worked to his actual and substantial disadvantage." *Perkins v. LeCureux*, 58 F.3d 214, 219 (6th Cir. 1995) (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982)); *see also Ambrose v. Booker*, 684 F.3d 638, 649 (6th Cir. 2012) (finding that "having shown cause, petitioners must show actual prejudice to excuse their default"). "When a petitioner fails to establish cause to excuse a procedural default, a court does not need to address the issue of prejudice." *Simpson v. Jones*, 238 F.3d 399, 409 (6th Cir. 2000). Likewise, if a petitioner cannot establish prejudice, the question of cause is immaterial.

Because the cause and prejudice standard is not a perfect safeguard against fundamental miscarriages of justice, the United States Supreme Court has recognized a narrow exception to the cause requirement where a constitutional violation has "probably resulted" in the conviction of one who is "actually innocent" of the substantive offense. *Dretke v. Haley*, 541 U.S. 386, 392

(2004) (citing *Murray v. Carrier*, 477 U.S. 478, 495–96 (1986)); *accord Lundgren v. Mitchell*, 440 F.3d 754, 764 (6th Cir. 2006).

### IV. ANALYSIS

The Petitions present seven claims of ineffective assistance of counsel. All federal claims of ineffective assistance of counsel are subject to the highly deferential two-prong standard of *Strickland v. Washington*, 466 U.S. 668 (1984), which asks: (1) whether counsel was deficient in representing the defendant; and (2) whether counsel's alleged deficiency prejudiced the defense so as to deprive the defendant of a fair trial. *Id.* at 687. Because the Sixth Amendment right to counsel extends to the plea-bargaining process, the *Strickland* test "applies to challenges to guilty pleas based on ineffective assistance of counsel." *Lafler v. Cooper*, 566 U.S. 156, 162–63 (2012) (quoting *Hill v. Lockhart*, 474 U.S. 52, 58 (1985)). The right to effective assistance of counsel also extends to the "first appeal of right," and representation there is also subject to evaluation under *Strickland*. *Mapes v. Tate*, 388 F.3d 187, 191 (6th Cir. 2004).

To meet *Strickland*'s first prong, a petitioner must establish that his attorney's representation "fell below an objective standard of reasonableness," and must overcome the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that . . . the challenged action 'might be considered sound trial strategy.'" *Id.* at 688–89. The "prejudice" component of the claim "focuses on the question of whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair." *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993). Prejudice under *Strickland* requires showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine

21

confidence in the outcome." *Id.* In the context of a claim based on ineffectiveness at the plea-bargaining stage, prejudice is shown by demonstrating "a reasonable probability that, but for counsel's errors, [the petitioner] would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. at 59.

## A. Properly Exhausted Claims

Petitioner's first two ineffective-assistance claims—(1) that counsel failed to ensure that all certified questions were dispositive or that all dispositive issues were included in those questions, or to inform him that the Court of Criminal Appeals could deem any certified question non-dispositive and thus decline to address it, and (2) that counsel, in briefing the certified questions before the Court of Criminal Appeals, failed to assert effectively her argument under Tenn. Code Ann. § 40-6-304(c)(2), allowing the Court of Criminal Appeals to deem the argument waived—were properly exhausted before the state courts and are thus appropriately considered here.

However, as discussed above, a federal court may not grant habeas relief on a claim that has been rejected on the merits by a state court, unless the petitioner shows that the state court's decision "was contrary to" law clearly established by the United States Supreme Court, that it "involved an unreasonable application of" such law, or that it "was based on an unreasonable determination of the facts" in light of the record before the state court. 28 U.S.C. §§ 2254(d)(1) and (2); *Williams v. Taylor*, 529 U.S. 362, 412 (2000). Thus, when an exhausted claim of ineffective assistance of counsel is raised in a federal habeas petition, the question to be resolved is not whether the petitioner's counsel was ineffective. Rather, "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable." *Harrington v. Richter*, 562 U.S. at 101. As the Supreme Court clarified in *Harrington*,

22

This is different from asking whether defense counsel's performance fell below *Strickland*'s standard. Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a *Strickland* claim on direct review of a criminal conviction in a United States district court. Under AEDPA, though, it is a necessary premise that the two questions are different. For purposes of § 2254(d)(1), an unreasonable application of federal law is different from an incorrect application of federal law. A state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself.

*Id.* (internal quotation marks and citation omitted).

The Tennessee Court of Criminal Appeals correctly identified and summarized the *Strickland* standard applicable to Petitioner's claims. *See King v. State*, 2017 WL 2805200, at *10–11. Accordingly, the critical question is whether the state court applied *Strickland* reasonably in reaching its conclusions. First, with respect to Petitioner's claim that counsel failed to ensure that all certified questions were dispositive or that all dispositive issues were included in those questions, or to inform him that the Court of Criminal Appeals could deem any certified question non-dispositive and thus decline to address it, the Court of Criminal Appeals concluded as follows:

The Petitioner claims that his plea was unknowingly and involuntarily entered because he received the ineffective assistance of counsel. He stated that after the trial court ruled on his motion to suppress, "instead of going to trial, [Sumner Counsel] negotiated a plea agreement, where the cases in all three counties would be resolved for a sentence of 40 years." He claims that because Sumner Counsel was lead counsel in the cases throughout the various counties, her actions and decisions should be attributed to the attorneys in those other counties. The State responds that the evidence presented shows that the Petitioner's plea was entered knowingly and voluntarily, and that without a transcript of the Petitioner's guilty plea, which the State notes is not included in the record, we are to presume the post-conviction[ ] court['s] findings correct. We agree with the State.

* * *

The post-conviction court, in its order, found that Petitioner had affirmed at the guilty plea hearing that he was making his own decision to plead guilty, as reflected in the "comprehensive colloquy" placed before the post-conviction court. The post-conviction court held that the record and plea transcript "affirmatively demonstrates that the Petitioner's guilty plea was made with an awareness of the consequences, and, as such, the guilty plea was voluntarily, intelligently, and knowingly entered."

23

The evidence presented at the post-conviction hearing was that it was the Petitioner's decision to enter a guilty plea and reserve a certified question of law. He was not "happy" about the plea, but he chose not to risk a trial where he faced possible lengthy sentences. Instead, he elected to accept the State's offer that greatly reduced his sentence while still retaining review of his certified questions of law. Sumner Counsel testified that the Petitioner was very engaged in the preparation of his case and in the decision whether to go to trial or plead guilty. Rutherford and Davidson Counsels affirmed that this was their impression of the discussions they observed. Sumner Counsel also stated that she did not like the State's offer and felt that the State was charging the Petitioner excessively. She further testified that she gave her clients the option to proceed to trial and did not shy away from trying a case. In this case, however, where the Petitioner faced a lengthy sentence approaching 100 years, Sumner Counsel encouraged him to enter a plea. Together, Sumner Counsel and the Petitioner weighed the risk of taking his case to trial, where he faced a lengthy sentence but retained all his rights of appeal, versus entering a guilty plea for a sentence of less than half the potential prison time but reduced rights of appeal. The Petitioner affirmed that he was asked at the guilty plea hearing whether he understood his right to trial and that he was giving up that right, which he stated he did. Based on this evidence, we conclude that the Petitioner's plea was entered knowingly and voluntarily and that Counsel's representation of the Petitioner with regard to his decision was effective. Thus, he is not entitled to relief.

The Petitioner next claims that Sumner Counsel was ineffective in her preparation of the certified questions of law and in her educating the Petitioner on the applicable law. The Petitioner claims that Sumner Counsel admitted that she knew that several of the certified questions were not dispositive but that she also knew that the Petitioner was only accepting the plea offer because he wanted his issues heard on appeal. He contends that Sumner Counsel "crafted [ ] certified question[s] that she knew to be ineffective in assisting [the Petitioner] to allow that to happen." The State responds that the evidence does not preponderate against the post-conviction court's findings that Sumner Counsel did not guarantee the Petitioner success on appeal and informed the Petitioner in advance that his success on appeal depended on the appellate court's interpretations of the law. We agree with the State.

The post-conviction court found that the Petitioner had agreed that Sumner Counsel had advised him of the procedural risks of the certified question and that she advised that she could not guarantee that the questions would be deemed dispositive by the appellate court. The post-conviction court found that Sumner Counsel in no way guaranteed him success on appeal and credited Sumner Counsel's testimony that she had adequately advised him of the risks related to the decision to proceed in this manner.

Our review of the evidence shows that the evidence does not preponderate against these findings and that Sumner Counsel was not ineffective in her representation of

the Petitioner regarding the certified questions of law. Sumner Counsel advised the Petitioner that there was the possibility that his questions would not be deemed dispositive and that this meant there was a risk that his issues would not be heard. Sumner Counsel fully understood the importance of the certified questions to the Petitioner and spent multiple meetings discussing the option to take his case to trial or accept a lesser sentence with the certified questions reserved. Sumner Counsel's prior experience with certified questions on appeal allowed her to advise the Petitioner of the risks but also the possibility for success. Sumner Counsel was not ineffective in her representation of the Petitioner in this regard.

The Petitioner points us to several decisions promulgating the standards and limitations for certified questions of law to which he claims Sumner Counsel did not adhere. *State v. Preston* stated that it was the appellate court's determination, not that of the trial court and the agreement of the parties, as to whether the certified question was dispositive. 759 S.W.2d 647 (Tenn. 1988). The Petitioner argues that Sumner Counsel was aware of this law, however, she failed to caution the Petitioner that the certified questions might not be heard. We disagree. The evidence shows that Sumner Counsel advised the Petitioner that, although not all questions would be deemed dispositive, she chose to include them anyway because it was her experience in the past that the appellate court would sometimes overlook whether a question was dispositive and choose to review it. This, however, was not "guaranteed" by Sumner Counsel, and the Petitioner testified that he was informed of that. The Petitioner is not entitled to relief on this issue.

*King*, 2017 WL 2805200, at *11–13.

The Court of Criminal Appeals reasonably analyzed these issues and determined that counsel was not ineffective under *Strickland*. The post-conviction court credited counsel's testimony regarding her advice and strategy with respect to the certified questions over Petitioner's contrary testimony, and the Court of Criminal Appeals found no reason to disturb that credibility finding. Neither court found any basis for concluding that counsel performed deficiently in crafting the certified questions, which "specifically include[ed] the [wiretap] Applications' failure to demonstrate the statutorily required nexus between the phone to be intercepted and the alleged illegal activity sought to be intercepted" under Section 40-6-304(c), *King*, 437 S. W. 3d at 863; Doc. No. 12-4 at 57, without excluding any subsection thereof. The state courts on initial post-conviction review and post-conviction appeal found that this presentation of the probable cause

issue did not waive any argument under the applicable subsections of Section 40-6-304(c). *King*, 2017 WL 2805200, at *13.

Based on the testimonial record, the Court of Criminal Appeals found that Petitioner, contrary to his assertion, had been fully advised of the risk that some certified questions might not be reviewed based on an appellate finding that they are non-dispositive, and had endorsed the decision to include all questions in the plea reservation in hopes of being rewarded with appellate review, based on counsel's "experience in the past that the appellate court would sometimes overlook whether a question was dispositive and choose to review it." *Id.* The Court of Criminal Appeals further found that, "[t]ogether, Sumner Counsel and the Petitioner weighed the risk of taking his case to trial, where he faced a lengthy sentence but retained all his rights of appeal, versus entering a guilty plea for a sentence of less than half the potential prison time but reduced rights of appeal," and "elected to accept the State's offer" of the latter "while still retaining review of his certified questions of law." *Id.* at *12. The Court of Criminal Appeals reasonably applied *Strickland* in determining that counsel did not perform deficiently at the plea-negotiation stage, with respect to Petitioner's certified questions or otherwise.

Next, as to counsel's performance in the Court of Criminal Appeals and her argument under Tenn. Code Ann. § 40-6-304(c)(2), the appellate court concluded as follows:

> The Petitioner lastly contends that Sumner Counsel provided ineffective assistance of counsel on appeal when she "waived [the Petitioner's] primary argument on his direct appeal," that being his argument related to the probable cause requirement found at Tennessee Code Annotated section 40–6–304(c)(2). He contends that Sumner Counsel improperly narrowed his appellate argument to one prong of the statute, (c)(4), in her reply brief, causing the appellate court to waive consideration of what he contends was his strongest argument. The State responds that Sumner Counsel's decisions to "use her reply brief to hone in on the specific issue the State focused on in its response brief was a reasonable strategic decision." We agree with the State.

The post-conviction court adopted the following findings with respect to this argument:

> First, [Sumner Counsel] testified that she briefed all of the issues raised in the certified question, which is supported by the comprehensive filing introduced as an exhibit to the post-conviction hearing. [Sumner Counsel] explained that since the State focused its response brief on one particular issue, she elected to hone in on that issue in her reply brief; however, she did not waive any issues by devoting her allotted number of reply brief page [sic] to hone in on countering the State's arguments. The Court credits [Sumner Counsel's] testimony and finds she made a reasonable strategic decision. [The] Petitioner has not demonstrated by clear and convincing evidence that [Sumner Counsel] was ineffective. The Court also notes that [the] Petitioner testified to the accuracy of [Sumner Counsel's] testimony.
>
> The evidence does not preponderate against the trial court's findings. Sumner Counsel provided her original appellate brief and reply brief as exhibits at the hearing and testified that she argued all prongs of the statute in her first brief and then, after the State responded, she addressed their particular argument in her reply brief. She stated that nothing that she did limited or waived her argument as to certain aspects of the statute and that she felt the appellate court had incorrectly determined that she had done so. We have reviewed the briefs from the direct appeal and have determined that the evidence does not preponderate against the post-conviction court's finding that Sumner Counsel fully briefed the Petitioner's argument related to the probable cause requirement found at Tennessee Code Annotated section 40–6–304(c). Sumner Counsel addressed the subsections of the statute in her brief that she felt most strongly aided her argument that the wiretaps were unlawful. While this Court's decision did limit the Petitioner's argument, we conclude that the Petitioner has not shown that Sumner Counsel was ineffective in this regard; she made a strategic decision to focus her argument in the reply brief that we will not second guess. The Petitioner is not entitled to relief.

*Id.* at *13.

The Court of Criminal Appeals reasonably applied *Strickland* in finding that counsel's briefing of the issues on appeal was driven by sound strategy, and that the construction of her reply brief on direct appeal did not result from any deficient performance on her part in focusing her reply around the arguments made in the state's response. *Cf. Moore v. Nixon*, No. 3:14-cv-00247, 2018 WL 2009613, at *15 (M.D. Tenn. Apr. 30, 2018) ("That co-counsel elected to focus her oral argument on one aspect of the suppression argument was a strategic choice that 'falls within the

27

wide range of reasonable professional assistance'" under *Strickland*.) Though it did not explicitly acknowledge error in the prior decision to exclude counsel's argument under Section 40-6-304(c)(2) from consideration on direct appeal, the Court of Criminal Appeals found that counsel had not waived that argument after raising it in her certified questions, and thus could not be found to have rendered ineffective assistance on appeal. Indeed, counsel thoroughly argued the "telephone nexus issue" in her opening appellate brief by reference to the "specific probable cause requirements" of all pertinent subsections of Section 40-6-304(c) (*see* Doc. No. 12-55 at 72, 74–88), critiquing the state's "focus[ ] only upon Tennessee Code Annotated § 40-6-304(c)(4)" in responding to her suppression motion, rather than "§ 40-6-304(c)(1), (2) and (4) as a whole." (*Id.* at 81.) Even in counsel's fateful reply brief, before referring to the requirement of subsection (c)(4) as "the heart" of her probable cause challenge, counsel takes the state to task for "only offer[ing] one (1) paragraph (really one (1) sentence) alleging the State complied with T.C.A. § 40-6-304(c)(2)," and repeats the argument "set forth in great detail" in her opening brief—that relevant Sixth Circuit authority supports her position rather than the state's vis-à-vis subsection (c)(2). (Doc. No. 12-57 at 18–21.) Plainly, counsel was not constitutionally ineffective in presenting these issues to the Court of Criminal Appeals.

For these reasons, the Court finds no merit in Petitioner's properly exhausted claims of ineffective assistance of counsel.

## B. Procedurally Defaulted Claims

Respondent asserts, and Petitioner concedes, that the remaining claims of the Petition were procedurally defaulted when they were not raised during post-conviction review. Because there is no longer any available state court remedy for these claimed violations, the claims are technically exhausted, but procedurally barred from habeas review unless Petitioner "can demonstrate cause

for the default and actual prejudice" from the claimed violations, or that a fundamental miscarriage of justice will result if this Court does not consider them. *Coleman*, 501 U.S. at 731–32, 750.

Petitioner asserts the ineffective assistance of his post-conviction counsel as cause for the procedural default of his remaining claims. The Supreme Court has "explained clearly that 'cause' under the cause and prejudice test must be something external to the petitioner, something that cannot fairly be attributed to him." *Id.* at 753. Attorney error is attributable to a habeas petitioner, and thus may not serve as cause for a procedural default, if the error is made at a stage of the proceedings when there is no right to counsel under the Sixth Amendment. *Id.* at 754. The Supreme Court held in *Coleman* that, because there is no constitutional right to counsel in state post-conviction proceedings, any attorney error at that stage that leads to the waiver of claims in state court "cannot constitute cause to excuse the default in federal habeas." *Id.* at 752, 757.

However, in *Martinez v. Ryan*, 566 U.S. 1 (2012), the Supreme Court modified "the unqualified statement in *Coleman* that an attorney's ignorance or inadvertence in a postconviction proceeding does not qualify as cause to excuse a procedural default, "by recognizing a narrow exception: Inadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." *Id.* at 9. This exception stems from the recognition, "as an equitable matter, that the initial-review collateral proceeding, if undertaken without counsel or with ineffective counsel, may not have been sufficient to ensure that proper consideration was given to a substantial claim" of trial counsel's ineffectiveness, when that claim could not have been raised on direct appeal because of state procedural rules. *Id.* at 13. In *Trevino v. Thaler*, 569 U.S. 413 (2013), the Supreme Court extended the applicability of the *Martinez* exception to states with procedural frameworks that do not preclude an ineffective-assistance claim on direct appeal, but make it unlikely that the opportunity

to raise that claim at that time will be a meaningful one. *Id.* at 429. The Sixth Circuit held in *Sutton v. Carpenter*, 745 F.3d 787 (6th Cir. 2014), that under Tennessee's procedural scheme, the initial post-conviction proceeding is the first meaningful opportunity to raise a claim of ineffective assistance of trial counsel. *Id.* at 795–96.

Thus, for each defaulted claim of ineffective assistance at trial, Petitioner may overcome the default under *Martinez* if he can show that the default resulted from his initial post-conviction counsel's ineffectiveness under *Strickland*'s standards, and that the underlying claim of trial counsel's ineffectiveness is a "substantial one, which is to say that . . . the claim has some merit." *Martinez*, 566 U.S. at 13–14. The Sixth Circuit has provided the following framework to evaluate claims under *Martinez*:

> As to these claims, the district court should determine . . . : (1) whether state post-conviction counsel was ineffective, . . . and (2) whether [Petitioner's] claims of ineffective assistance of counsel were "substantial" within the meaning of *Martinez*, *Sutton*, and *Trevino*. Questions (1) and (2) determine whether there is cause. The next question is (3) whether [Petitioner] can demonstrate prejudice. Finally, the last step is: (4) if the district court concludes that [Petitioner] establishes cause and prejudice as to any of his claims, the district court should evaluate such claims on the merits. . . . [E]ven "[a] finding of cause and prejudice does not entitle the prisoner to habeas relief. It merely allows a federal court to consider the merits of a claim that otherwise would have been procedurally defaulted." *Martinez*, 132 S. Ct. at 1320.

*Atkins v. Holloway*, 792 F.3d 654, 660 (6th Cir. 2015) (some internal citations omitted).

Whether post-conviction counsel was constitutionally ineffective is necessarily connected to the strength of the claim he failed to raise, so "in many habeas cases seeking to overcome procedural default under *Martinez*, it will be more efficient for the reviewing court to consider in the first instance whether the alleged underlying ineffective assistance of counsel was 'substantial' enough to satisfy the 'actual prejudice' prong of *Coleman*." *Thorne v. Hollway*, No. 3:14–cv–0695, 2014 WL 4411680, at *23 (M.D. Tenn. Sept. 8, 2014), *aff'd sub nom. Thorne v. Lester*, 641 F.

App'x 541 (6th Cir. 2016). For the reasons that follow, each of Petitioner's ineffective-assistance claims is insubstantial and thus fails to overcome default under *Martinez*.

1. Claim 3

Petitioner claims that counsel was ineffective when she did not assert before the trial courts that the wiretap application failed to establish probable cause to believe that interceptions of Petitioner's cellphone would reveal particular communications concerning a charged offense, as required by Section 40-6-304(c)(2), rather than merely that a high volume of calls was made to co-conspirators from Petitioner's cellphone. To the extent that this claim focuses on counsel's arguments for suppression of the wiretap evidence, rather than her crafting of the certified questions discussed above, it is a defaulted claim subject to review for substantiality. However, the claim fails the substantiality test, because counsel made this exact assertion in her comprehensive argument for suppression of the wiretap evidence based on lack of probable cause (*see* Doc. No. 12-3 at 69, 73–77), and the Sumner County court, in denying counsel's motion to suppress, explicitly found "probable cause for belief that particular communications concerning conspiracy to deliver over 700 pounds of marijuana will be obtained through the interception[.]" (Doc. No. 12-4 at 31.) In short, counsel did precisely what Petitioner faults her for not doing. This ineffective-assistance claim is thus insubstantial and not subject to further review under *Martinez*.

2. Claim 4

Petitioner claims that counsel was ineffective in failing to argue adequately for suppression or to raise a proper certified question based on the trial court's acting as a rubber stamp for the prosecution's wiretap applications. Counsel raised this argument in her motion to suppress (Doc. No. 12-3 at 62–63) and as a certified question (Doc. No. 12-4 at 58; Doc. No. 12-55 at 112–14), but Petitioner argues that she "did not properly lay the foundation relative [to] this point by

31

establishing that this suppression would have eliminated" large swaths of incriminating evidence collected pursuant to the rubber-stamped wiretap authorizations. (Doc. No. 2 at 55–57.)

Petitioner offers no authority to suggest that highlighting the significance of the evidence in question is necessary or appropriate in a motion to suppress, much less that an attorney is ineffective for failing to do so. The Supreme Court has stated that "courts must . . . insist that the magistrate purport to perform his neutral and detached function and not serve merely as a rubber stamp for the police," *United States v. Leon*, 468 U.S. 897, 914 (1984) (citations and internal quotation marks omitted), but it does not appear to have found a Sixth Amendment violation resulting from counsel's failure to pursue the enforcement of this proposition beyond raising the relevant argument(s). Nor was counsel required to argue every nook and cranny of each component of her certified question, regardless of the relative strength or weakness of such arguments, in order to provide effective representation. *See Jones v. Barnes*, 463 U.S. 745, 751–53 (1983) ("Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues. . . . A brief that raises every colorable issue runs the risk of burying good arguments . . . in a verbal mound made up of strong and weak contentions.").

Counsel made the "rubber-stamp" argument in both the trial and appellate courts, and not in a perfunctory or insubstantial way. Her failure to lay a more extensive foundation for this argument or to present it differently in her certified questions of law was not ineffective. This claim is not substantial.

3. Claim 5

Petitioner claims that counsel failed to know or advise him properly that the plea agreement offered by the state required him to admit guilt to certain charges on which the state could not

otherwise have obtained convictions, including (1) separate conspiracy charges in each of the three counties based on the same evidence, which could only have been used to show the existence of a single conspiracy; and (2) charges of money laundering, when his admitted conduct did not suffice to establish all statutory elements of the crime. Petitioner argues that counsel did not discern deficiencies in the charges against him because she "failed to subject the prosecution's case to the proper adversarial testing." (Doc. No. 2 at 59.) He claims that the record "overwhelmingly establishes" that he "wanted a trial and . . . would not have pled guilty" if he had known of the alleged defects in certain charges of indictment. (*Id.* at 61.) For several reasons, this claim lacks substance.

First, Petitioner claims that counsel allowed him to plead guilty to drug, conspiracy, and money laundering offenses "that were not offenses" in multiple counties without analyzing potential double jeopardy issues and giving him the "information he needed to know as to what he was truly facing in order to make an informed decision relative [to] accepting a plea or risking a trial." (Doc. No. 2 at 60.) But he testified at his Davidson County post-conviction hearing (the transcript of which was incorporated into the record of his Sumner and Rutherford County post-conviction proceedings (*see* Doc. No. 12-63 at 6; Case No. 3:18-cv-00018, Doc. No. 11-63 at 3–4)) that he had discussed with counsel "about we wouldn't be able to tell -- what would fall under double jeopardy and so on and so forth," and agreed that he understood that "if [he'd] had a trial in one of the counties, it may have prevented a prosecution on some of the counts in other counties[.]" (Doc. No. 12-64 at 91–92.) He was thus aware of at least the potential for dismissal of some of the charges he faced if he rejected the state's plea offer and proceeded to trial.

Second, Petitioner's conspiracy and drug trafficking charges in Sumner, Davidson, and Rutherford Counties were rendered in indictments that differed in the dates of the conspiracies

charged, the identities of Petitioner's co-conspirators, and the overt acts taken in furtherance of the charged conspiracies. (*Compare* Doc. No. 12-1 at 5–31 *and* Doc. No. 12-3 at 3–21 *with* Doc. No. 12-5 at 4–5.) These differences suggest that, rather than being charged with "multiple offenses [that] are the object of the same agreement or continuous conspiratorial relationship" and therefore amount to one conspiracy under state law, Tenn. Code Ann. § 39-12-103(c), Petitioner was properly charged with, and pled guilty to, a series of conspiracies with different groups of co-conspirators to carry out similar criminal conduct in multiple jurisdictions. He has therefore not shown that the indictments placed him in jeopardy of multiple punishments for the same conspiracy. *Cf. United States v. Leal*, 330 F. Supp. 3d 1257, 1276–77 (D.N.M. 2018), *aff'd*, 921 F.3d 951 (10th Cir. 2019) ("In June, 2016, Leal conspired with B. Tapia, and C. Tapia to distribute methamphetamine; in July 2016, Leal allegedly conspired with Carmona, and Arreola-Palma to distribute methamphetamine. These conspiracies are distinct and do not overlap in time. Consequently, the Double Jeopardy Clause does not apply.") (internal citation omitted).

Third, with regard to his money laundering convictions, Petitioner argues that the charges were objectionable because, during his Davidson County plea to the charge of conspiracy to commit money laundering, he only admitted to using criminal proceeds to buy property in the Bahamas; he did not admit that he used those proceeds with the intent to conceal or disguise their source, as required to commit the offense of money laundering. He thus appears to claim that counsel, who attended the Davidson County plea hearing (*see* Doc. No. 12-64 at 17), should not have advised him subsequently to plead guilty to any money laundering charges. (*See* Doc. No. 22 at 36–37, 47–49.) In her post-conviction testimony, counsel confirmed that Petitioner "had some defenses as to some of the money laundering counts in this case that I thought were just improperly charged[,] [b]ut on the real meaningful counts . . . that carried a hundred percent time, the counts

that carried a lot of potential exposure, we really didn't have a defense if the wiretap proof came in[,] . . . [s]o it was all about the wiretap." (Doc. No. 12-64 at 23.) While Petitioner's co-conspirator, Lockhart, ultimately succeeded in winning reversal of money laundering verdicts involving different transactions because the state failed at trial to prove intent to conceal, *Lockhart*, 2015 WL 5244672, at *42, it does not follow that counsel unreasonably advised Petitioner to plead guilty to similar charges, when in doing so he preserved a pathway to appellate review of the wiretap issues and ensured a much shorter overall sentence.

Even if a substantial claim of counsel's deficient performance could be made, it is clear that any ineffectiveness "was [not] 'substantial' enough to satisfy the 'actual prejudice' prong of *Coleman*." *Thorne*, 2014 WL 4411680, at *23. In an attempt to establish prejudice resulting from any deficient advice to plead guilty to those charges that would potentially have been dismissed on double jeopardy grounds, or those money laundering charges that did not appear to be supported by proof of intent to conceal the ill-gotten nature of the funds, Petitioner asserts that "he no doubt would not have pled guilty absent counsel's ineffectiveness in permitting him to ple[a]d to charges under a false premise that he could be convicted of all offenses in all counties when in fact the same was impossible." (Doc. No. 2 at 60.) But this self-serving statement is not supported by any credible reason to believe that Petitioner would have scuttled the entire plea agreement for the sake of winning the dismissal of those charges, especially given that pleading to those charges did not impact the overall length of his sentence.[10] As noted by the court in *Hernandez v. United States*, No. 09 CIV. 6496, 2010 WL 1558559 (S.D.N.Y. Apr. 19, 2010):

> Because a convicted defendant will always have a strong incentive to make a prejudice claim after conviction, courts are skeptical of the defendant's own "self-serving, post-conviction testimony" that but for counsel's bad advice, the defendant

---

[10]   Petitioner's 40-year prison term was established by consecutive 20-year sentences on one conspiracy conviction and one drug conviction, with all other sentences to be served concurrently. (*See* Doc. No. 12-4 at 40–52.)

would have pled guilty or gone to trial. *See Purdy v. Zeldes*, 337 F.3d 253, 259 (2d Cir. 2003) (in addressing prejudice showing required on ineffective assistance claim, court noted that "a convicted felon's self-serving testimony is not likely to be credible"); *Toro v. Fairman*, 940 F.2d 1065, 1068 (7th Cir. 1991) (self-serving statement in memorandum that defendant "would have to have been insane not to accept the plea agreement for the minimum sentence" insufficient); *Andrews v. United States*, No. 08 Civ. 3325, 2009 WL 860702, at *6 (S.D.N.Y. Mar. 31, 2009) (rejecting petitioner's self-serving contention that he would have pled guilty before trial if counsel had secured actual inculpatory audio evidence beforehand); *cf. United States v. Gordon*, 156 F.3d 376, 381 (2d Cir. 1998) (habeas petitioner showed prejudice under *Strickland* by providing "objective evidence" of a disparity between Guidelines sentencing exposure and the sentence exposure represented by counsel in addition to petitioner's statement concerning his intentions).

*Id.* at *11.

At Petitioner's post-conviction hearing, his Davidson County attorney testified that "the plea deal encompassing all three counties was a 'package deal' from the outset and was never going to be anything other than a global settlement," and that the state was eager to take the case to trial if Petitioner balked at the plea offer. *King*, 2017 WL 2805200, at *6; *see also* Doc. No. 12-64 at 19 (transcript of counsel's testimony that plea deal "was certainly a package deal" for disposition of all charges in all counties). The post-conviction testimonial record establishes that Petitioner understood the global nature of the plea offer, understood that he was likely to be convicted based on the wiretap evidence and heavily sentenced if he went to trial, and agreed to forgo important trial and appellate rights contingent upon his ability to reserve certified questions for appeal—all of which concerned the legality of wiretap authorizations which, if found to be unlawful, would have resulted in the dismissal of all charges against him. *Id.* at *4–7. Counsel testified that Petitioner "felt very strongly, as did I, that there was a real problem with these wiretaps," that he knew "the State's case against him was built on these wiretaps," and that "he felt that if he could prevail on the wiretaps it would effectively undo the impact this case was having on his life." (Doc. No. 12-64 at 21.) Petitioner's testimony confirmed that, while he

understood the sentence he would have faced had he gone to trial,[11] having the ability to pursue the full spectrum of issues on appeal was "so important to [him] that [he] would have risked that just to have them heard," but for the ability to reserve certified questions on the most critical issues alongside his guilty plea. (*Id.* at 90–94, 118.) These certified questions regarding the wiretap evidence—not Petitioner's professed assumption that all charges in all counties were viable—were the hinge upon which his guilty plea swung, "*the* enticing factor for that plea deal for Mr. King." (Doc. No. 12-64 at 22 (emphasis added).) Petitioner cannot demonstrate a "reasonable probability" that, but for counsel's failure to advise him properly, he would have risked his full sentence exposure by proceeding to trial for the sake of winning dismissal of only certain charges, as he claims here. *Hill*, 474 U.S. at 59.

In sum, this ineffective-assistance claim is not substantial.

4. Claims 6 and 7

In Claim 6, Petitioner asserts that counsel was ineffective in failing to seek the dismissal of the prosecution or the disqualification of the prosecutor based on his conflict of interest in representing the state in both the criminal prosecution and in civil forfeiture proceedings, where the prosecutor sought the forfeiture of Petitioner's assets for the benefit of the 20th Judicial Drug Task Force. This claim is based on his assertion of the unconstitutionality of "the construction of Tennessee's Judicial District Drug Task Forces" and the 20th Judicial Drug Task Force's "arrangement with and within the Davidson County Prosecutor's Office," as well as the prosecutor's dual role in investigating and prosecuting on the criminal side while pursuing civil forfeiture proceedings against a co-defendant. (Doc. No. 24 at 2; Doc. No. 2 at 69.)

---

[11]    Counsel testified that she "forecasted Mr. King's potential trial exposure in the ninety plus year range" with "[f]ifty plus years . . . at a hundred percent if those school zone counts were stacked." (Doc. No. 12-64 at 24.)

Respondent contends that counsel could not have been ineffective in this regard because (1) the prosecutor, General Zimmerman, was a Davidson County employee who was duly appointed to prosecute Petitioner in Sumner and Rutherford Counties pursuant to state law (Doc. No. 14 at 38 (citing Tenn. Code Ann. § 8-7-106(b)(1)), and (2) "Judicial Drug Task Forces, and the prosecutor's role in the task force, are statutorily authorized," and the statutory scheme dictates that "[a]ny forfeiture proceeds arising from the activities of a judicial drug task force . . . 'shall be used exclusively in a drug enforcement or drug education program of the district attorney as directed by the board of directors of the judicial drug task force.'" (*Id.* at 39 (quoting, *e.g.*, Tenn. Code Ann. § 39-17-420(c).) Respondent further notes that, pursuant to Tenn. Code Ann. §§ 8-7-105(c) and 40-33-211(b), "General Zimmerman received a predetermined salary" that was not conditioned upon or supplemented by funds generated by asset forfeitures. (*Id.* at 41.)

In Claim 7, Petitioner asserts that counsel failed to challenge the prosecution's retaliatory filing of charges in multiple counties to keep him from being released on bail, or from being able to afford to retain counsel in each county, as well as the prosecution's targeting of assets for forfeiture when those assets were not involved with illegal activity. Respondent argues that the failure to raise such claims of pretrial prosecutorial vindictiveness could not have prejudiced Petitioner because they could not have resulted in dismissal of the charges against him.

The Court finds that Claims 6 and 7 are not substantial because Petitioner cannot show that counsel performed deficiently in failing to raise these issues or that he was prejudiced by that failure. Counsel reasonably decided to focus her defense on the legality of the wiretaps around which the entire prosecution was based, by attacking the state's showing of probable cause to procure the foundational wiretap orders. In the wake of the trial court's denial of her suppression motion and the appellate court's refusal to entertain an interlocutory appeal, counsel might have

jeopardized plea negotiations by pursuing concerns over the propriety of the prosecution's entanglement with the drug task force, the hats being simultaneously worn by prosecutor Zimmerman, or issues with the civil forfeiture proceedings against Petitioner. Her failure to do so was not unreasonable.

Although he alleges a conflict of interest, Petitioner does not claim that the proceedings against him were tainted by any sort of structural error requiring relief even in the absence of prejudice. Rather, he complains of "the appearance of impropriety" and argues that counsel "should have challenged the 20th Judicial District Drug Task Force arrangement in and under the District Attorney's Office as violative of the due process clause." (Doc. No. 2 at 69.) He further argues that "simply because [the arrangement] is statutorily legal does not mean that it is Constitutional." (Doc. No. 22 at 54.) But even if this arrangement under the Tennessee statutory scheme could be viewed as improper, in order to substantiate his ineffective-assistance claim, Petitioner must provide some reason to believe that counsel acted unreasonably in failing to assert a federal due process challenge to the arrangement and that that failure actually prejudiced him. This, he has failed to do.

Petitioner asserts that "[t]he task force in this case was also essentially the DA's own private personally embedded and glamorized police department," which enabled Zimmerman and other attorneys in the office to "police, investigate, become witness and prosecutor, confiscate property and represent [their] civil interest, and hence assure [their] salaries and the other political interest[s] of those who help[ed them] . . . rise to the top[.]" (*Id.* at 53–54.) But these speculative inferences from the mere potential for official misconduct are contraindicated by the statutes that (1) set Zimmerman's salary, Tenn. Code Ann. § 8-7-105(c), (2) direct forfeiture proceeds into a county fund to be used for drug enforcement purposes, *id.* § 39-17-420(c), and (3) direct that

forfeiture proceeds "not be used to supplement the salaries of any public employee or law enforcement officer," *id.* § 40-30-211(b). Moreover, "judicial district task forces are governed by a board of directors, not the district attorney general." Tenn. Op. Att'y Gen. No. 12-10, 2012 WL 251874, at *3 n.4 (Jan. 20, 2012) (citing Tenn. Code Ann. § 8-7-110(a)). The two entities jointly investigate and enable the prosecution of drug crimes, and it is not surprising that they would target a large criminal enterprise operating in multiple counties. Petitioner has shown no grounds for finding that counsel performed deficiently by failing to appreciate some apparent unconstitutionality in the arrangement between these entities, and to challenge the prosecution on that basis.

Furthermore, Attorney Zimmerman's prosecution of both the criminal proceedings and related civil forfeiture actions against Petitioner and his co-defendants does not appear to implicate Petitioner's due process rights. Petitioner's argument to the contrary principally relies on three Supreme Court decisions— *Tumey v. Ohio*, 273 U.S. 510 (1927), *Ward v. Village of Monroeville*, 409 U.S. 57 (1972), and *Marshall v. Jerrico, Inc.*, 446 U.S. 238 (1980)—and lower-court cases citing them, for the proposition that, while prosecutors are advocates and need not remain as financially disinterested as judges in performing their duties, "[a] scheme injecting a personal interest, financial or otherwise, into the enforcement process may bring irrelevant or impermissible factors into the prosecutorial decision and in some contexts raise serious constitutional questions." (Doc. No. 24 at 3 (quoting *Marshall*, 446 U.S. at 249–50).) Even so, the Court cannot find that in the context of this case, counsel should reasonably have raised a due process objection to Zimmerman's zealous pursuit of forfeitures while leading the prosecution.

In *Dick v. Scroggy*, 882 F.2d 192 (6th Cir. 1989), the Sixth Circuit found that an attorney who prosecuted the habeas petitioner on a state DUI charge while simultaneously representing the

40

petitioner's victim in a civil suit against him did not maintain a "dual role [that] so tainted the criminal proceedings as to compel the conclusion that petitioner was deprived of his liberty without due process of law." *Id.* at 193. The court explained as follows:

> Mindful of the need for particular restraint where a federal court has undertaken collateral review of the final judgment of a state court, we are not persuaded that Mr. Dick's prosecution by a Commonwealth Attorney who may have been less than disinterested constituted an irregularity "sufficiently fundamental" to justify our setting aside the conviction in this case.

> It bears emphasis, we think, that although the prosecutor is an officer of the court, the role of the prosecutor is very different from that of the judge. A financial interest that would disqualify a judge, under cases such as *Tumey v. Ohio*, 273 U.S. 510, 47 S.Ct. 437, 71 L.Ed. 749 (1927), and *Ward v. Village of Monroeville*, 409 U.S. 57, 93 S.Ct. 80, 34 L.Ed.2d 267 (1972), may be "too remote and insubstantial to violate the constitutional constraints applicable to the decisions of [one] performing prosecutorial functions." *Marshall v. Jerrico, Inc.*, 446 U.S. 238, 243–44, 100 S.Ct. 1610, 1614, 64 L.Ed.2d 182 (1980). Prosecutors, in an adversary system, "are necessarily permitted to be zealous in their enforcement of the law." *Id.* at 248, 100 S.Ct. at 1616. Prosecutors are supposed to be advocates; judges are not. Thus it is not without significance, in our view, that in the landmark case of *Tumey v. Ohio*, *supra*, where the mayor of the Village of North College Hill, Ohio, received significant sums from fines assessed in cases tried in the "mayor's court" over which he presided, it was the financial interest of the mayor, sitting as a judge, that led the Supreme Court to hold that convictions obtained in the mayor's court were constitutionally infirm; although the prosecutor received more than twice as much as the mayor out of the fines assessed, the prosecutor's financial interest evoked no critical comment from the Supreme Court.

*Dick v. Scroggy*, 882 F.2d at 196–97. Following the reasoning of the Sixth Circuit and its application of this Supreme Court precedent in the habeas context, this Court likewise finds that the instant habeas case does not involve a sufficiently fundamental irregularity (if any irregularity at all) in Petitioner's prosecution and forfeiture proceedings to have required counsel to challenge them on due process grounds.

As to prejudice, other than his perception of an appearance of impropriety, Petitioner offers no grounds for finding that the prosecution acted unlawfully in proceeding against him and all assets of his that were subject to forfeiture. Nor has he referred the Court to any case in which a

41

court has disapproved parallel prosecution and forfeiture actions because they were pursued through the joint efforts of a district attorney general's office and drug task force, as occurred in this case. Furthermore, as it relates to Petitioner's criminal prosecution, it appears likely that the remedy for any impropriety would not have been dismissal of the charges against him, but substitution of a different prosecutor, which would likely not have changed the outcome given the strength of the evidence against Petitioner. *See id.* at 197.

In sum, Petitioner has not established that effective counsel would have been bound to raise a challenge to the arrangement between prosecution and drug task force here, nor any likelihood that a challenge to this arrangement would have benefitted him. Claim 6 is thus not sufficiently substantial to warrant further review under *Martinez*.

With regard to Claim 7, Petitioner cannot demonstrate that counsel ineffectively failed to challenge the prosecution's aggressive or vindictive approach to bringing charges in multiple counties and pursuing Petitioner's assets. Counsel testified as to her consideration of these issues in negotiating with Mr. Zimmerman, as follows:

> . . . I want to say that we had an initial offer that may have been forty [years] at thirty percent but the requirements -- but he didn't have a certified question permitted in there. Also the State was really insistent on Mr. King cooperating, which was not going to happen. And when we went back to Mr. Zimmerman and asked -- let him know that we would not be cooperating and we wanted to do the certified question I want to say the offer went to forty at thirty-five percent. And I remember it took a while to put this offer together because Mr. Zimmerman and I had a lot of debate about the significance of Mr. King, first of all, pleading out of range but also having to plead in multiple counties. I felt like it was excessive and unnecessary, it gave him additional criminal convictions. Yeah, I didn't see why we couldn't just plead in one county, but Mr. Zimmerman was insistent that we had to plead in all counties I want to say because of some sort of forfeiture perspective, that each county needed to be able to get a piece of the overall forfeiture in the case. . . . But ultimately it was certainly a package deal . . . that all the counties would be disposed of through this one disposition.

(Doc. No. 12-64 at 18–19.) It thus appears that counsel did challenge the multi-county, forfeiture-focused prosecution in negotiations with Mr. Zimmerman, but strategically withheld more stringent demands on these points in order to secure the state's agreement to Petitioner's most important positions, namely his insistence on not cooperating and on retaining a right to certify questions for appeal. This strategy was not unreasonable. *See Buell v. Mitchell*, 274 F.3d 337, 360 (6th Cir. 2001) (tactical judgments made by counsel during the course of the representation "do not rise to the level of constitutional ineffectiveness"). Moreover, as discussed previously, Petitioner has not offered any credible reason to believe that, had counsel advised him that the prosecution's tactics could be challenged before the trial court as vindictive, he would have rejected the state's plea offer and insisted on going to trial. This is not a substantial ineffective-assistance claim.

Because Petitioner's defaulted claims of counsel's ineffectiveness are not substantial, they do not warrant further consideration pursuant to *Martinez* and are deemed procedurally defaulted without cause.

## V. CONCLUSION

For the foregoing reasons, the Petition will be denied and this action will be dismissed with prejudice.

The Court must issue or deny a certificate of appealability ("COA") when it enters a final order adverse to a Section 2254 petitioner. Rule 11, Rules Gov'g § 2254 Cases. A petitioner may not take an appeal unless a district or circuit judge issues a COA. 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b)(1). A COA may issue only if the petitioner "has made a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2). A "substantial showing" is made when the petitioner demonstrates that "reasonable jurists could debate whether (or, for that matter, agree

43

that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (citations and internal quotation marks omitted). "[A] COA does not require a showing that the appeal will succeed," but courts should not issue a COA as a matter of course. *Id.* at 337.

Because reasonable jurists could not debate whether Petitioner's claims should have been resolved differently or are deserving of encouragement to proceed further, the Court will deny a COA. Petitioner may seek a COA directly from the Sixth Circuit Court of Appeals. Rule 11(a), Rules Gov'g § 2254 Cases.

An appropriate Order is filed herewith.

_____
WILLIAM L. CAMPBELL, JR.
UNITED STATES DISTRICT JUDGE